UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

MULTIBAND CORPORATION,                          Case No. 1:11-CV-15006-TLL-CEB

              Plaintiff,                          Hon. Thomas L. Ludington

v.

HENRY BLOCK,

              Defendant.
_____/

# DEFENDANT HENRY BLOCK'S
# MOTION FOR SANCTIONS

Under Federal Rule of Civil Procedure 11, Defendant Henry Block moves this Court for sanctions against Multiband Corporation and its counsel for amending its complaint in this action to assert claims that are plainly subject to arbitration under the parties' employment contract.  In support of its motion, Mr. Block states as follows:

1.      Block is an employee of Plaintiff Multiband Corporation under an Executive Employment Agreement (the "Agreement").

2.      The Agreement contains the following arbitration provision:

> **Section P.  Dispute Resolution**:  Except as otherwise indicated in this Agreement, any and all disputes arising pursuant to any of the terms of this Agreement or which relate in any manner whatsoever to this Agreement which cannot be resolved in a reasonable time by discussions between the "Parties" (the Employer and the Employee) shall be submitted to arbitration in Mt. Pleasant, Michigan, before a sole arbitrator (the 'Arbitrator') selected from Judicial Arbitration and Mediation Services, Inc., Mt. Pleasant, Michigan, or its successor ("JAMS") …

3.      On December 27, 2011, Multiband filed an arbitration demand with JAMS asserting that Block violated his obligations under the employment agreement.

4.      On December 29, 2011, Multiband filed an amended complaint in this matter that

purports to assert claims for breach of fiduciary duty, constructive trust, and unjust enrichment

against Block.  Comparison of Multiband's amended complaint and Multiband's arbitration

demand show that Multiband is attempting to litigate the same issues arising from the same facts

in two separate forums despite the parties' agreement to arbitrate.

5.      Multiband's attempt to circumvent its agreement to arbitrate violates the JAMS

Employment Arbitration Rules and Procedures and the Agreement.

6.      Multiband and its counsel knew of the obligation to arbitrate the claims presented

in its amended complaint but nonetheless sought to litigate those claims in this Court.

Accordingly, Multiband's attempt to litigate these claims in this Court is without an adequate

basis in law or fact and is apparently intended to "needlessly increase the cost of litigation" in

violation of Federal Rule of Civil Procedure 11(b)(1).

7.      Consistent with Rule 11(c)(2), this motion was served upon Multiband and its

counsel on Monday, January 9, 2012 and 21 days has passed since that date.  See Exhibit A,

1/9/11 Ltr to A Concannon and Accompanying Motion.

8.       Under Local Rule 7.1, Block sought concurrence in this motion.  Multiband does

not concur.

Accordingly, Defendant Henry Block respectfully requests that this Court impose

sanctions under Rule 11 against Multiband and its counsel in the amount equal to the reasonable

attorney fees and costs incurred by Block because of Multiband's frivolous amended complaint.

This Motion is supported by the accompanying brief and exhibits.

3

Dated: January 31, 2012          *s/ Matthew T. Nelson*

Matthew T. Nelson (P64768)
Douglas S. Van Zanten (P72356)
**WARNER NORCROSS & JUDD LLP**
900 Fifth Third Center
111 Lyon Street, N.W.
Grand Rapids, MI 49503
616.752.2000
mnelson@wnj.com
dvanzanten@wnj.com
Attorneys for Defendant

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MULTIBAND CORPORATION,                          Case No. 1:11-cv-15006-TLL-CEB

               Plaintiff,                          Hon. Thomas L. Ludington

v.

HENRY BLOCK,

               Defendant.

_____/

# DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR SANCTIONS

## INTRODUCTION

This case is an employment dispute based on an employment contract between Plaintiff

Multiband Corporation and Defendant Henry Block.  The employment contract requires the

parties to arbitrate all disputes between the parties related to Block's employment.  In the

Amended Complaint Multiband filed in this Court, Multiband claims that Block violated his

duties to Multiband by engaging in a business that competes with Multiband.  Each of its claims

is directly related to Block's employment with Multiband and subject to arbitration under the

employment contract.  Further, the Federal Arbitration Act and federal and state law demonstrate

that the arbitration agreement at issue is valid and enforceable.

Multiband is fully aware of its obligation to arbitrate its employment-related claims.  Two

days before filing its Amended Complaint, Multiband filed an arbitration demand with Judicial

Arbitration and Mediation Services, Inc. ("JAMS") initiating arbitration against Block.  The

Statement of Claim contains nearly identical factual allegations to those in the Amended

1

Statement of Claim.  Multiband's attempt to take two bites at the apple and litigate the same

issues in two different forums is a clear-cut attempt to needlessly increase the cost of litigation to

Block.

This is an improper purpose for a court filing under FRCP 11(b)(1) and this Court should

sanction Multiband and its counsel.  Block has incurred attorney's fees and costs as a result of

responding to an Amended Complaint containing allegations that should have been raised in the

arbitration Multiband filed *two days prior* to filing the Amended Complaint in this Court.

Because of these actions, this Court Multiband should sanction Multiband and its counsel in an

amount equal to all attorney's fees and costs incurred by Block as a result of Multiband's

Amended Complaint.

## BACKGROUND

## I.  Multiband Assumes Block's Employment Agreement with DirecTECH Holding Company

The agreement at issue in this case originated when Defendant Henry E. Block entered

into an Executive Employment Agreement with DireTECH Holding Company, Inc. ("DTHC")

on October 1, 2004.  Exhibit 1, Block Executive Employment Agreement (the "Employment

Agreement"[1]).  DTHC was a holding company for a group of business involved in providing

services associated with DIRECTV systems, including installation, maintenance, and upgrades

of DIRECTV systems in residential homes.  According to the terms of the Employment

Agreement, DTHC agreed to employ Block as a Vice President with all the powers, authority,

and duties associated with that position.  *Id.* at § A.  Block and DTHC first amended the

---

[1] The Block Executive Employment Agreement attached as Exhibit 1 includes all subsequent amendments to the Agreement and the term "Employment Agreement" as used throughout refers to the agreement as amended.

Employment Agreement on December 27, 2007 to increase Block's salary and amend Block's

Principal Place of Employment. *Id.* at § B, D.

Block and DTHC again amended the Employment Agreement on December 30, 2008

with an amendment entitled "Amendment 2008-1 to the Executive Employment Agreement for

Henry E. Block." *Id.* Among other changes, Amendment 2008-1 added a new arbitration

provision to the Employment Agreement requiring that all employment-related disputes between

the parties be resolved through arbitration:

> **Section P.  Dispute Resolution**.  Except as otherwise indicated in
> this Agreement, any and all disputes arising pursuant to any of the
> terms of this Agreement or which relate in any manner whatsoever
> to this Agreement which cannot be resolved in a reasonable time
> by discussions between the "Parties" (the Employer and the
> Employee) shall be submitted to arbitration in Mt. Pleasant,
> Michigan, before a sole arbitrator (the 'Arbitrator') selected from
> Judicial Arbitration and Mediation Services, Inc., Mt. Pleasant,
> Michigan, or its successor ("JAMS") …

*Id.* at § P.  The Employment Agreement, including its Dispute Resolution section, remained

intact for the remainder of Block's employment with DTHC.

DTHC and Plaintiff Multiband Corporation began negotiating a potential stock purchase

near the end of 2008.  Multiband was involved in the same DIRECTV service work as those

business entities that made up DTHC and was interested in purchasing DTHC's stock.

Eventually DTHC agreed to sell 100% of its issued and outstanding stock in its operating entities

to Multiband pursuant a Stock Purchase Agreement.  As part of this transaction, DTHC and

Multiband entered into a Master Assignment and Assumption Agreement on January 2, 2009,

under which Multiband agreed to assume DTHC's agreements, obligations, and liabilities under

a number of agreements, including the Employment Agreement between DTHC and Block.  As a

result of this stock purchase, on January 2, 2009 Block became a Vice President at Multiband.

3

Block began working for Multiband as its Vice President of Marketing.  His duties in this position include, among other things, controlling and maintaining the internal and external communications of Multiband through web site design and image, managing and overseeing all marketing efforts of Multiband and its subsidiaries, managing and developing the Multiband Support Center in Fargo, North Dakota, and managing Multiband personnel placed under his control.

## II.    Multiband Places Block on Indefinite Leave

Block's relationship with Multiband changed in early 2011.  Block refused to use his position on the board of [insert] to favor Multiband to the detriment of the participants in the ESOP.  Doing as Multiband wanted would have violated both state and federal law.  Further, Block initiated arbitration against Multiband to enforce other contractual indemnity obligations that Multiband violated.  On January 21, 2011, Don Snyder, Multiband's Vice President of Human Resources, asked to meet with Block at Multiband's office in Mount Pleasant, Michigan.  At that meeting, Snyder informed Block that Jim Mandel, Multiband's President and Chief Executive Officer, and Steve Bell, Multiband's General Counsel, had decided to place Block on a ten-week paid leave.  Snyder informed Block that Multiband did not have issues with the quality of Block's work but that Mandel and Bell had grown increasingly frustrated with Block to the point that a "cooling off" period was necessary.  Snyder informed Block that he was not to perform any of his normal job duties for Multiband during the leave period.  At the end of the initial ten-week period, Multiband informed Block that he would remain on leave for at least another month.  When the additional leave-period lapsed, Multiband informed Block that his leave would be extended again.  Multiband ultimately informed Block in early July 2011 that he was being placed on an indefinite leave and that he should not resume work until instructed to do

so. In other words, Multiband suspended Block without pay and stripped him of all the duties associated with his position.

### III. Multiband Files Arbitration Claim Against Block with JAMS and Later Files Complaint With Similar Allegations in Federal Court.

In late December of 2011, Multiband took its first step toward ending its relationship with Block. Multiband filed a Statement of Claim with Judicial Arbitration and Mediation Services, Inc. ("JAMS") on December 27, 2011, alleging that Block was involved in a business that competed with Multiband. Exhibit 2, Multiband JAMS Statement of Claim. In its Statement of Claim, Multiband acknowledges that any disputes related to Block's employment need to be arbitrated with JAMS according to the Employment Agreement. *Id.* at ¶ 12. Multiband's Statement of Claim alleges that Block was involved in the formation and ongoing operation of Blockco, a purported competing business and that his supposed involvement in that business violates his Employment Agreement. *Id.* Multiband's Statement of Claim contains a single legal count, breach of contract, and seeks damages and a declaration that the Employment Agreement is null and void. *Id.*

Two days after filing its Statement of Claim with JAMS, Multiband filed his Amended Complaint in this action, making essentially the same allegations as those set out in the Statement of Claim. Multiband's initial complaint named both Block and Bernie Schafer as defendants and related to an ongoing dispute between Block/Schafer and Multiband concerning Block and Schafer's rights to indemnification from Multiband for expenses and a settlement associated with a Department of Labor investigation of Block and Schafer's sale of stock to the DTHC. Docket No. 1.

Block's counsel sent a letter to Multiband's counsel on January 9, 2012 requesting that

Multiband dismiss the Amended Complaint filed with this Court because those claims are

subject to arbitration.  Exhibit 3, 1/9/11 Ltr from D Van Zanten to A Concannon.  The letter

further stated that if Multiband refused to dismiss the Amended Complaint and pursue its claims

in arbitration, Block would seek to enforce the parties arbitration agreement.  Because of the

evidence that Multiband was fully aware of its duty to arbitrate, Block simultaneously served a

Rule 11 motion asking Multiband to dismiss the amended complaint within the safe harbor

provided by Rule 11.  Exhibit 4, Motion for Sanctions.  Multiband gave no response.

## ARGUMENT

## I.      Multiband Should Be Sanctioned for Filing an Amended Complaint Containing Claims Plainly Subject to Arbitration

In Block's Motion for Sanctions, Block requests that this Court sanction Multiband for

filing an Amended Complaint containing claims that are subject to arbitration and that were only

filed in this Court with the intention of increasing the cost of litigation.

FRCP 11(b)(1) states that an attorney presenting any pleading to the Court certifies that

the pleading "is not being presented to the court for any improper purpose, such as to harass,

cause unnecessary delay, or needlessly increase the cost of litigation."  Rule 11(c) authorizes the

court to sanction any attorney who files a pleading for an improper purpose.  Courts in the Sixth

Circuit have enforced Rule 11 and authorized sanctions where a party has filed a pleading for an

improper purpose, such as unnecessarily increasing the cost of litigation.  *Tropf v. National*

*Fidelity Ins. Co.*, 289 F.3d 929, 939 (6th Cir. 2002); *Lockheed Martin Energy Systems, Inc. v.*

*Slavin*, 190 F.R.D. 449, 458 (E.D. Tenn. 1999).  Here, Multiband filed claims in this Court based

on the same factual allegations contained in a JAMS Statement of Claim filed only a few days

6

earlier. The allegations and legal claims in the Amended Complaint concern Block's

employment with Multiband and the duties Multiband claims Block owes it. These allegations

and claims are "related" to Block's Employment Agreement and should have been pursued in the

JAMS Statement of Claim. The only reason for Multiband to have raised these claims in this

Court two days after filing its Statement of Claim with JAMS is to "needlessly increase the cost

of litigation" for Block. FRCP 11(c). Multiband should be sanctioned[2] for its filing of the

Amended Complaint and refusal to move such claims to arbitration when asked.

This Court should sanction Multiband in an amount equal to all costs and fees incurred

by Block as a result of the filing of the Amended Complaint. FRCP 11(c)(4) authorizes a court

to authorize sanctions through "an order directing payment to the movant of part or all of the

reasonable attorney's fees and other expenses directly resulting from the violation." According

to the Sixth Circuit, "'an award of attorney's fees [against a plaintiff's attorney] should be

limited to those expenses reasonably incurred to meet the other party's groundless, bad faith

procedural moves.'" *In re Ruben*, 825 F.2d 977, 990 (6th Cir. 1987) (quoting *Browning*

*Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078, 1089 (2d Cir. 1977)). This

amount can include the "attorney's fees for having to prepare . . . rule 11 briefs." *Knop v.*

*Johnson*, 667 F. Supp. 512, 522 (W.D. Mich. 1987); FRCP 11(c)(2). Soon after receiving

Multiband's Amended Complaint, Block's counsel requested that Multiband dismiss the claims

because they were subject to arbitration with JAMS. Exhibit 3, 1/9/11 Ltr from D Van Zanten to

A Concannon. When Multiband refused to do so, Block was forced to incur the cost of

preparing an answer and a motion to compel arbitration, incurring costs and attorney's fees

---

[2] As required by FRCP 11(c)(2), Block served its Motion for Sanctions on Multiband's counsel
on January 9, 2011 and provided Multiband the 21-day "safe harbor" period to withdraw its
Amended Complaint before Block filed the Motion for Sanctions with this Court. *See* Exhibit 4.

associated with preparing these pleadings.  Had Multiband included these claims in the

Statement of Claim it filed two days earlier with JAMS as required under the Employment

Agreement, Block would not have incurred these costs and fees.

Accordingly, Block requests that this Court grants its Motion for Sanctions and sanction

Multiband in an amount equal to all reasonable attorney's fees and costs incurred by Block in as

a result of Multiband's Amended Complaint.

## CONCLUSION

For the reasons set forth above, Block requests that the Court enter an Order granting

Block's Motion for Sanctions and awarding Block all reasonable attorney's fees and costs he

incurred as a result of Multiband's Amended Complaint.

Dated: January 31, 2012

*s/ Matthew T. Nelson*
Matthew T. Nelson (P64768)
Douglas S. Van Zanten (P72356)
**WARNER NORCROSS & JUDD LLP**
900 Fifth Third Center
111 Lyon Street, N.W.
Grand Rapids, MI 49503
616.752.2000
mnelson@wnj.com
dvanzanten@wnj.com
Attorneys for Defendant

**Certificate of Service**

I hereby certify that on January 31, 2012, I electronically filed the foregoing paper with the Clerk

of the Court using the ECF system which will send notification of such filing to the following:

Andrew D. Concannon.

Dated: January 31, 2012               *s/ Matthew T. Nelson*
                                      Matthew T. Nelson (P64768)
                                      Douglas S. Van Zanten (P72356)
                                      **WARNER NORCROSS & JUDD LLP**
                                      900 Fifth Third Center
                                      111 Lyon Street, N.W.
                                      Grand Rapids, MI 49503
                                      616.752.2000
                                      mnelson@wnj.com
                                      dvanzanten@wnj.com
                                      Attorneys for Defendant

6949742

9