UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MULTIBAND CORP.,

                Plaintiff,

v.                                         Case Number 11-15006
                                         Honorable Thomas L. Ludington

HENRY BLOCK,

                Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND GRANTING DEFENDANT'S MOTION FOR SANCTIONS**

       This case involves a disagreement between an employer, Plaintiff Multiband Corp., and

its vice president of sales and marketing, Defendant Henry Block.  Plaintiff alleges that

Defendant operates a business that competes with Plaintiff, breaching his fiduciary duties of

loyalty, care, honesty, and good faith and fair dealing.

       The present dispute centers on the arbitrability of the parties' disagreement.  Defendant

has filed two motions, a motion to compel arbitration and a motion for sanctions.  ECF Nos. 10–

12.  First, Defendant moves to compel arbitration.  He notes that his employment contract

provides that Defendant owes his employer the allegedly breached duties (for example, the

contract cautions that termination for cause may result if there is a "breach of the Employee's

duty of loyalty").  The contract further provides that the parties agree to arbitrate "any and all

disputes arising pursuant to any terms of this Agreement or which relate in any manner

whatsoever to this Agreement."  Based on these terms, Defendant requests an order compelling

arbitration.

Plaintiff opposes the motions. Plaintiff begins by asserting that the contract does not reference the particular duties at issue. Plaintiff next argues that arbitration clause has a limited scope. And finally, Plaintiff argues that the claims are not subject to arbitration as the duties also arise under a source independent of the contract, state law, because of Defendant's position as a corporate officer.

Plaintiff's arguments lack merit. The contract does reference the particular duties at issue. In fact, it expressly obligates Defendant to abide by them. The arbitration clause has a broad scope, not a limited one. As noted, it provides that the parties agree to arbitrate all disputes that "relate in any manner whatsoever to this Agreement." And merely because state law may impose similar duties does not render the claims outside the scope of the arbitration clause. The Court will grant Defendant's motion to compel arbitration.

Defendant further moves to sanction Plaintiff pursuant to Federal Rule of Civil Procedure 11(b). Although discretionary, the Court reluctantly concludes that sanctions are appropriate in this case. The factual misstatements contained within Plaintiff's papers warrant them. The comprehensive scope of the arbitration clause warrants them. And the frivolous arguments advanced in opposition to the arbitrability of the dispute warrant them. Accordingly, the Court will also grant Defendant's motion for sanctions.

**I**

Plaintiff is a Minnesota corporation. Its primary business is installing satellite television equipment on behalf of DirecTV, Inc. Defendant, as noted, is Plaintiff's vice president of sales and marketing.

Prior to working for Plaintiff, Defendant had more than two decades of experience in the satellite television industry. In 1985, Defendant and another gentleman, Bernard Schafer,

founded Michigan Microtech, Inc.  Like Plaintiff, Microtech sells and installs satellite television equipment.

In 2000, Microtech entered into a series of agreements with DirecTV.  One provided that Microtech would be the exclusive service provider of DirecTV for residential users in Michigan.  The relationship with DirecTV proved profitable.   So Defendant and Mr. Schafer looked to expand.  In 2003, they acquired ownership and management interests in a company providing similar services to DirecTV in Kentucky, DirecTECH, Inc.  While remaining the sole owners of Microtech, the gentlemen acquired partial ownership and management interests in DirecTECH.  They also became members of DirecTECH's board of directors.

A short time later, the owners of Microtech and DirecTECH (including Defendant and Mr. Schafer) looked to expand yet again.   Seeking economies of scale, they formed a new corporation with two other entities, DirectTECH Southwest, Inc., and JBM, Inc.  Owners of the four entities exchanged their ownership interests for shares of stock in the new company, DirecTECH Holding Company, Inc. ("Holding Company").

Defendant and Mr. Schafer were named directors of the Holding Company and trustees of its employee stock ownership trust.[1]

The Holding Company also hired Defendant as an employee.  In October 2004, the Holding Company and Defendant executed an "executive employment agreement."   *See*

---

[1] As a general matter, the United States Code confers favorable tax treatment on qualifying employee stock ownership trusts.   Under  26 U.S.C. §§ 402 and 1042, if certain requirements are met a corporation can contribute tax deductible dollars to an employee stock ownership trust, have the trust pay such contributions to selling shareholders, and have the selling shareholders defer taxation on a capital gain.

The employee stock ownership trusts in this case, however, encountered serious difficulties.  The Internal Revenue Service and the Department of Labor both conducted investigations.   Ultimately, the IRS challenged the Holding Company's characterizations of certain transactions under 26 U.S.C. § 1042 and imposed taxes, penalties, and interest.   Defendant and Mr. Schafer then filed a malpractice suit against their attorneys.  *See Schafer v. Johanson*, No. 09-10349-BC, 2009 WL 2496943 (E.D. Mich. Aug. 17 2009) (providing background).  In 2010, the parties agreed to arbitrate their dispute and this Court dismissed the case.

Executive Employment Agreement, *attached as* Def.'s Am. Mot. Compel Arbitration Ex. 1.  The contract establishes Defendant's job title (vice president), his salary (including a "base compensation" of $250,000), his duties (both general and specific), and how the parties would resolve disputes related to the contract (arbitration).

Among Defendant's general duties, the contract provides, are the duties of "skill, care, and diligence."   In particular, the contract requires: "The Employee shall faithfully and industriously assume and perform with skill, care, diligence and attention all responsibilities and duties connected with his employment on behalf of the Employer."  *Id*. § (A)(1)(c).

Additionally, the contract provides that Defendant owes a "duty of loyalty."  It cautions that termination for cause may result if there is a "breach of the Employee's duty of loyalty, including the diversion or usurpation of corporate opportunities properly belonging to the Employer."  *Id*. § (M)(1); *see id*. § (L) ("During the Employment Term, the Employee shall devote his best efforts and substantially all of his normal work time to advance the interests of the Employer.  The Employee may be engaged in other business and commercial activities and pursuits but only if they do not interfere with the Employee's duties to the Employer.").

A merger clause provides: "This Agreement contains the entire agreement and understanding between the parties with respect to the subject matter hereof.  It may not be changed orally, but may be changed only by agreement in writing signed by the party against whom enforcement of any waiver, change, modification, or discharge is sought."  *Id*. § (T).

Finally, the contract has an arbitration provision.  As originally drafted (it was redrafted in 2008), the arbitration provision provided in pertinent part: "If any controversy or claim arising out of this Agreement cannot be settled by the parties or through mediation within ninety (90)

days after the first written notice invoking this Section, the controversy or claim shall be settled by arbitration." *Id.* § (P).

In 2008, the Holding Company began negotiating for its sale to Plaintiff.  Two days before the sale closed, the Holding Company and Defendant executed an amendment to the employment contract.  *See* Amendment 2008-1 to the Executive Employment Agreement ¶ 7, *attached as* Def.'s Am. Mot. Compel Arbitration Ex. 1.  Signed on December 30, the amendment added a new section to the contract addressing the consequences of a "corporate change."

Additionally, the arbitration provision was replaced with an amendment expanding the scope of arbitrable issues from those "arising out of" the agreement to those that "relate in any manner" to the agreement.  The amendment provided in pertinent part:

> Section P of the Agreement is hereby deleted in its entirety and replaced with the following:
>
> P. Dispute Resolution.  Except as otherwise indicated in this Agreement, any and all disputes arising pursuant to any terms of this Agreement or which relate in any manner whatsoever to this Agreement which cannot be resolved in a reasonable time by discussions between the "Parties" (the Employer and the Employee) shall be submitted to arbitration in Mt. Pleasant, Michigan, before a sole arbitrator (the 'Arbitrator') selected from Judicial Arbitration and Mediation Services, Inc., Mt. Pleasant, Michigan.

*Id.* ¶ 5.

On January 1, 2009, Plaintiff completed its purchase of the Holding Company.  Incident to the purchase, Plaintiff executed an "indemnification agreement" and a "master assignment and assumption agreement."   The indemnification agreement provided that Plaintiff agreed to indemnify Defendant and Mr. Schafer for claims "which arise as the result of acts or omission of the Board Member within the scope of his activities for and on behalf of [the Holding Company] . . . which do not involve deliberate wrongful acts or gross negligence by the board member." Compl. ¶ 26.

The master assignment and assumption agreement provided that Plaintiff agreed to assume the agreements and obligations of the Holding Company, including the employment contract with Defendant. Retaining his vice president title, Defendant became Plaintiff's vice president of sales and marketing.

In 2011, the relationship between Plaintiff and Defendant deteriorated. The parties disagree about who caused the breakdown. Plaintiff caused it, Defendant asserts, explaining: "Block's relationship with Multiband changed in early 2011. Block refused to use his position on the board of directors at [the Holding Company] to favor Multiband to the detriment of the participants in the [Holding Company's employee stock ownership plan]. Doing as Multiband wanted would have violated both state and federal law." Def.'s Am. Mot. to Compel Arbitration 4, ECF No. 11.

Plaintiff, in contrast, asserts that Defendant caused the breakdown by secretly competing with Plaintiff. In early 2011, Plaintiff alleges, Defendant's "Blockco" began holding itself out as an authorized dealer of Dish Network (the principal competitor of DirecTV). "In the Fall of 2011," Plaintiff writes, "it was learned that the defendant was in direct competition with Multiband in the satellite television business. Upon information and belief, this competition began in early 2011. . . . The plaintiff's main customer is DirecTV, a direct competitor and arch-rival to the defendant's customer, Dish Network." Am. Comp. ¶ 16, ECF No. 6.

This litigation followed. On November 11, 2011, Plaintiff filed a two-count complaint against Defendant and Mr. Schafer alleging that Plaintiff is not liable under the indemnity agreement. Specifically, count one sought a declaration that the indemnity agreement is unenforceable. Pleading in the alternative, count two asserted that if the indemnity agreement is

enforceable, Defendant and Mr. Schafer nevertheless are not entitled to indemnification because of their gross negligence as trustees of the Holding Company.

On December 27, 2011, Plaintiff initiated arbitration by filing a complaint with the arbitrator identified in the contract. Foreshadowing the allegations in the forthcoming amended complaint (filed two days after the arbitration complaint), the arbitration complaint alleged: "In the Fall of 2011, it was learned that the Respondent was in direct competition with Multiband in the satellite television business. Upon information and belief, this competition began in early 2011. . . . The plaintiff's main customer is DirecTV, a direct competitor and arch-rival to Dish." Arbitration Comp. ¶ 16, *attached as* Def.'s Am. Mot. Compel Arbitration Ex. 2. It concludes: "The Respondent's conduct in this regard constitutes competition against the company and constitutes a breach of contract." *Id.* ¶ 18.

Two days after initiating arbitration proceedings, Plaintiff filed an amended complaint in this Court. The amended complaint removed Mr. Schafer as a defendant. It also removed the claims regarding the indemnity agreement. In their place, the amended complaint raises claims regarding Defendant's alleged competition with Plaintiff. *See, e.g.*, Am. Comp. ¶ 16 (quoted above). By engaging in this competition, the amended complaint alleges, Defendant breached his fiduciary duties. Specifically, he breached his: (1) "Duty of loyalty"; (2) "Duty of care": (3) "Duty of good faith and fair dealing"; and (4) "Duty of honesty." *Id.* ¶ 24. Regarding the duty of good faith and fair dealing, the amended complaint elaborates:

> Both the defendant's own employment contract (which has been breached) and the defendant's status as an officer require that he act with the utmost good faith and loyalty to further the interests of the corporation.

> In his capacity as marketing director for the plaintiff, defendant had the obligation to utilize a reasonable and appropriate skill in aggregating and promoting customer opportunities for the plaintiff corporation instead of a rival of the plaintiff corporation.

> By engaging in financial transactions on behalf of customers of a direct competitor of the plaintiff and/or aiding and abetting the operating of a competing business on property he owns, the defendant has breached his duty of good faith and fair dealing in his dealings with the corporation.

*Id*. ¶¶ 34–36.  Regarding the duty of honesty, the amended complaint specifies: "By engaging in financial transactions on behalf of customers of a direct competitor of the plaintiff and/or aiding and abetting the operating of a competing business on property he owns, the defendant has breached his duty of honesty in his dealings with the corporation."  *Id*. ¶ 41.  As a remedy, the amended complaint requests that the Court impose a constructive trust and order disgorgement for unjust enrichment.

Defendant now moves to compel arbitration and for Rule 11 sanctions.  ECF Nos. 10–12.

## II

## A

First, Defendant moves to compel arbitration.  Substantively, Defendant is moving to dismiss the complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  A motion to dismiss for lack of subject matter jurisdiction may be based on either a facial attack or a factual attack on the allegations of the complaint.  *Tri-Corp Mgmt. Co. v. Praznik*, 33 F. App'x 742, 745 (6th Cir. 2002).

When the Court reviews a factual attack on subject matter jurisdiction, as in this case, no presumption of truthfulness applies to the factual allegations of the complaint.  *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  The Court may rely on affidavits or any other evidence properly before it and has wide latitude to collect evidence to determine the issue of subject matter jurisdiction.  *Rogers v. Stratton Indus*., 798 F.2d 913, 915 (6th Cir. 1986).  A

plaintiff must demonstrate jurisdiction in order to survive the motion. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

**B**

The Federal Arbitration Act requires a federal court to compel arbitration when a party to an arbitration agreement fails or refuses to comply with the provisions of an enforceable arbitration agreement.  9 U.S.C. § 4.

In three cases now known as the "*Steelworkers* Trilogy," the Court established four fundamental principles regarding federal arbitration.  *E.g.*, *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (citing *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); *Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564 (1960); and *Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593 (1960)).

First, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T*, 475 U.S. at 648 (quoting *Warrior & Gulf*, 363 U.S. at 582).  That is, "arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." *AT&T*, 475 U.S. at 648–49 (citing *Gateway Coal Co. v. United Mine Workers of Am.*, 414 U.S. 368, 374 (1974)).

Second, "the question of arbitrability — whether a [contract] creates a duty for the parties to arbitrate the particular grievance — is undeniably an issue for judicial determination." *AT&T*, 475 U.S. at 649.  Thus, "whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties." *Id.* (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547(1964)).

Third, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *AT&T*, 475 U.S. at 649.   Rather, the court must simply evaluate whether the particular grievance is arbitrable. *Id*. at 650.

And fourth, under federal law "there is a presumption of arbitrability." *Id*. Consequently, "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.   Doubts should be resolved in favor of coverage." *Id*. (internal alteration omitted) (quoting *Warrior & Gulf*, 363 U.S. at 582–83).

In this case, the contract provides that "any and all disputes arising pursuant to any terms of this Agreement or which relate in any manner whatsoever to this Agreement . . . shall be submitted to arbitration."   Amendment 2008-1 to the Executive Employment Agreement ¶ 5. Thus, the contract has both a narrow and broad arbitration provision — the parties agree to arbitrate both disputes arising from the express terms of the employment contract and claims that "relate in any manner" to the employment relationship.   Moreover, both the narrow and broad encompass Plaintiff's claims.

As noted, the amended complaint alleges Defendant breached four fiduciary duties, his: (1) "Duty of loyalty"; (2) "Duty of care": (3) "Duty of good faith and fair dealing"; and (4) "Duty of honesty."   Am. Compl. ¶ 24.   Each of these duties is a term of the contract.

The duty of loyalty is an express term, with the contract cautioning that termination for cause may result if there is a "breach of the Employee's duty of loyalty, including the diversion or usurpation of corporate opportunities properly belonging to the Employer."   Executive Employment Agreement § (M)(1).

The duty of care is also an express term, with the contract providing: "The Employee shall faithfully and industriously assume and perform with skill, care, diligence and attention all responsibilities and duties connected with his employment on behalf of the Employer." *Id*. § (A)(1).

The duty of good faith and fair dealing is similarly created by the contract. The amended complaint acknowledges as much, asserting in pertinent part: "Both the defendant's own employment contract (which has been breached) and the defendant's status as an officer require that he act with the utmost good faith and loyalty to further the interests of the corporation." Am. Compl. ¶ 34; *see also* Executive Employment Agreement § (L) ("During the Employment Term, the Employee shall devote his best efforts and substantially all of his normal work time to advance the interests of the Employer. The Employee may be engaged in other business and commercial activities and pursuits but only if they do not interfere with the Employee's duties to the Employer.").

Finally, the contract expressly imposes a duty of honesty (as the term is used in the amended complaint). The amended complaint equates the duty of honesty with the duty of loyalty, providing: "By engaging in financial transactions on behalf of customers of a direct competitor of the plaintiff and/or aiding and abetting the operating of a competing business on property he owns, the defendant has breached his duty of honesty in his dealings with the corporation." Am. Compl. ¶ 41. As noted, the contract expressly requires that Defendant not compete against Plaintiff, cautioning that termination for cause may result if Defendant is found to have made a "diversion or usurpation of corporate opportunities properly belonging to the Employer." Executive Employment Agreement § (M)(1).

As Plaintiff's claims arise under the express terms of the parties' contract, Defendant is entitled to compel arbitration — even under the narrow provision of the arbitration clause.

Reinforcing this conclusion is the broad provision of the arbitration clause.  As noted, it specifies that the parties agree to arbitrate not only those "disputes arising pursuant to any terms of this Agreement," but also all disputes that "relate in any manner whatsoever to this Agreement."  The amended complaint itself acknowledges that its claims relate to the contract.  *E.g.*, Am. Compl. ¶ 34 (quoted above).  Defendant is entitled to compel arbitration.

Against this conclusion, Plaintiff makes three arguments.  None are meritorious.  First, Plaintiff writes:  "Plaintiff is the master of his complaint and may seek relief as he wishes to.  In this particular case, plaintiff cannot be coerced to arbitrate a breach of fiduciary duty claim when the fiduciary duties contained in the complaint do not appear in the contract itself."  Pl.'s Resp. to Def.'s Mot. to Compel Arbitration 6 (internal citation omitted), ECF No. 19.  This argument is contrary to both fact and law.

Factually, Plaintiff is incorrect that "the fiduciary duties contained in the complaint do not appear in the contract itself."  *Id.*  As detailed above, each of the fiduciary duties allegedly breached are terms of the contract.  Moreover, Plaintiff is incorrect that it "cannot be coerced to arbitrate a breach of fiduciary duty claim when the fiduciary duties contained in the complaint do not appear in the contract itself."  *Id.*  The arbitration clause does not limit the arbitrable issues to only those "disputes arising pursuant to any terms of this Agreement," but also subjects to arbitration all disputes that "relate in any manner whatsoever to this Agreement."  Amendment 2008-1 to the Executive Employment Agreement ¶ 5.

Substantively, Plaintiff is correct that it is "the master of [the] complaint" and thus is entitled to elect which claims to plead.  Plaintiff's artful pleading does not, however, limit this

Court's "independent obligation to investigate and police the boundaries of [its] own jurisdiction." *Douglas v. E.G. Baldwin & Assocs., Inc.*, 150 F.3d 604, 607 (6th Cir. 1998). When a factual challenge to the court's subject matter jurisdiction is presented, as in this case, the court has wide latitude to collect evidence. *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986). As detailed above, an independent review of the contract demonstrates that the parties agreed to arbitrate this dispute.

Plaintiff's second argument is similarly unpersuasive. It asserts that "the claims are not implicated by the arbitration provision — since the action could be maintained without reference to the contract at issue." Pl.'s Resp. 7. In support, Plaintiff cites *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386 (6th Cir. 2003). Plaintiff's reliance is misplaced.

*Fazio* arose out of "a massive fraud in which Frank Gruttadauria, a Cleveland stockbroker, misappropriated at least $54 million of his clients' money." *Id*. at 391. When the clients brought suit against the brokerage houses, the defendants moved to compel arbitration based on the account agreements' arbitration provisions. The district court refused to compel arbitration. Holding that the claims were outside the arbitration provision, the court wrote: "Conduct amounting to theft is so beyond what is expected from a broker that such conduct could not have been within the reasonable contemplation of the Plaintiffs when they signed the alleged account agreements." *Id*. at 395. The Sixth Circuit reversed, explaining:

> District courts have the authority to decide, as a threshold matter, whether an issue is within the scope of an arbitration agreement. A proper method of analysis here is to ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement. Torts may often fall into this category, but merely casting a complaint in tort does not mean that the arbitration provision does not apply. Even real torts can be covered by arbitration clauses if the allegations underlying the claims "touch matters" covered by the agreement. . . .

> [In this case], it is evident that the fraudulent activities were a violation of the account agreements and arose out of activities contemplated by those agreements the sale and purchase of securities and the management of accounts. The lawsuit by necessity must describe why Gruttadauria was in control of the plaintiffs' money and what the brokerage houses' obligations were. The plaintiffs therefore cannot maintain their action without reference to the account agreements, and accordingly, this action is covered by the arbitration clauses.

*Id.* (internal alterations, quotation marks, and citations omitted) (quoting *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 846 (2d Cir. 1987)).

In this case, as in *Fazio*, Plaintiff's suit cannot "be maintained without reference to the contract or relationship at issue." *Id.* The foundation of Plaintiff's suit is the parties' relationship — specifically, Defendant's role as Plaintiff's vice president — a relationship created by the parties' contract. *See generally* Larry E. Ribstein, *A New Age?: Are Partners Fiduciaries?*, 2005 U. Ill. L. Rev. 209, 212 (2005) ("[T]he existence of default fiduciary duties depends solely on the structure of the parties' relationship — that is, on the terms of their express or implied contract."). The contract names Defendant as vice president of Plaintiff. The contract provides that it "contains the entire agreement and understanding between the parties with respect to the subject matter hereof." Executive Employment Agreement § (T). Outside the contract, there is no agreement between the parties regarding Defendant's employment relationship.

Moreover, as in *Fazio*, the allegations in this case do not merely "touch matters covered by the agreement." *Fazio*, 340 F.3d at 395. They embrace the express terms of the agreement, as detailed above. Defendant is entitled to compel arbitration.

Finally, Plaintiff asserts that its claim is not subject to arbitration because the Michigan Business Corporation Act imposes the duties of loyalty, care, and good faith and fair dealing on directors and officers. Pl.'s Resp. 5 (citing Mich. Comp. Laws § 450.1541a). Plaintiff

-14-

elaborates: "Since the duties of good faith and fair dealing and loyalty are not expressly spelled out in the employment agreement, but are made part and parcel of an officer[']s duties under the Michigan Business Corporation Act, those duties are not made part and parcel of the agreement." *Id*. As noted, Plaintiff's premise is unfounded — the amended complaint itself recognizes "Both the defendant's own employment contract (which has been breached) and the defendant's status as an officer require that he act with the utmost good faith and loyalty." Am. Compl. ¶ 34. Defendant is entitled to compel arbitration.

## III

Defendant next moves for sanctions pursuant to Federal Rule of Civil Procedure 11. Defendant "requests that this Court sanction Multiband for filing an Amended Complaint containing claims that are subject to arbitration and that were only filed in this Court with the intention of increasing the cost of litigation." Def.'s Mot for Sanctions 6, ECF No 12. Specifically, Defendant requests the Court sanction Plaintiff "in an amount equal to all costs and fees incurred by [Defendant] as a result of the filing of the Amended Complaint." *Id*. at 7.

## A

Rule 11 provides that when an attorney submits a pleading to a federal court, the attorney certifies to the best of his or her "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. P. 11(b)(1)–(3).   In evaluating whether to impose sanctions, the Advisory Committee Notes provide the following factors for a court to consider:

> Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants.

Fed. R. Civ. P. 11 advisory committee notes (1993 amend.); *see generally* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1336.1 (3d ed. 2004).

In the Sixth Circuit, "the test for the imposition of Rule 11 sanctions [is] 'whether the individual's conduct was reasonable under the circumstances.' " *Union Planters Bank v. L & J Dev. Co*., 115 F.3d 378, 384 (6th Cir. 1997) (quoting *Lemaster v. United States*, 891 F.2d 115, 118 (6th Cir. 1989)).   The standard is objective.   *Mann v. G & G Mfg., Inc*., 900 F.2d 953, 959 (6th Cir. 1990) (citing *INYST Fin. Group, Inc. v. Chem. Nuclear Sys*., 815 F.2d 391, 401 (6th Cir.1987)).

In this case, the arguments raised in opposing arbitration are objectively unreasonable. They ignore the plain language of the contract.   They ignore settled law.   Sanctions are appropriate.

First, the arguments ignore the contract's plain language.   In opposing the motion to compel arbitration, for instance, Plaintiff asserts that its claims are not arbitrable because "the duties of good faith and fair dealing and loyalty are not expressly spelled out in the employment agreement."   Pl.'s Resp. to Mot. to Compel Arbitration 5.   Contrary to Plaintiff's contention, the contract specifically cautions that termination may result if there is a "breach of the Employee's duty of loyalty."   Executive Employment Agreement § (M)(1).   Plaintiff's amended complaint

itself recognizes that these duties are part of the contract, asserting in pertinent part: "Both the defendant's own employment contract (which has been breached) and the defendant's status as an officer require that he act with the utmost good faith and loyalty." Am. Compl. ¶ 34.

Similarly, in opposing the motion for sanctions, Plaintiff asserts that "the arbitration provision limits arbitrable claims to those which arise pursuant to the terms of the agreement." Pl.'s Resp. to Mot. for Sanctions 3, ECF No. 18. Contrary to Plaintiff's contention, the contract provides that the parties agree to arbitrate not only those "disputes arising pursuant to any terms of this Agreement," but also all disputes that "relate in any manner whatsoever to this Agreement." Amendment 2008-1 to the Executive Employment Agreement ¶ 5.

Not only are the arguments advanced by Plaintiff contrary to the plain language of the contract, they are contrary to settled principles regarding federal arbitration. The Supreme Court has long held that "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83(1960) (internal alteration omitted). The Sixth Circuit likewise instructs: "The presumption of arbitrability is particularly applicable to broad arbitration clauses." *United Steel Workers of Am. v. Century Aluminum of Ky.*, 157 F. App'x 869, 872 (6th Cir. 2005) (citing *AT&T*, 475 U.S. at 650).

Here, the arbitration provision covers all disputes that "relate in any manner whatsoever to this Agreement." Amendment 2008-1 to the Executive Employment Agreement ¶ 5. To argue that claims contained in the amended complaint are not subject to arbitration is objectively unreasonable.

Similarly unreasonable is Plaintiff's argument that the claims are not subject to arbitration as the fiduciary duties also arise under state law, a source independent of the employment contract. The case Plaintiff relies on, *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386 (6th Cir. 2003), not only does not support Plaintiff's argument, it demonstrates the unreasonableness of the argument. In *Fazio*, the Sixth Circuit did not hold that a claim is not arbitrable if touches an independent source. To the contrary, the court wrote that independent claims "can be covered by arbitration clauses if the allegations underlying the claims 'touch matters' covered by the agreement." *Id*. at 395 (internal quotation marks omitted) (quoting *Genesco, Inc. v. T. Kakiuchi & Co., Ltd*., 815 F.2d 840, 846 (2d Cir. 1987)).

Fundamentally, Plaintiff's argument seeks to reverse the "strong policy favoring arbitration." *Teamsters Local Union No. 783 v. Anheuser-Busch, Inc.,* 626 F.3d 2010 (6th Cir. 2010). Sanctions are appropriate.

**B**

Sanctions imposed pursuant to Rule 11 "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). "The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Id*.

"Since the purpose of Rule 11 sanctions is to deter rather than to compensate," the advisory notes observe, "the rule provides that, if a monetary sanction is imposed, it should ordinarily be paid into court as a penalty." Fed. R. Civ. P. 11 advisory committee notes (1993 amend.).

"Still," the Sixth Circuit cautions, "compensating the victim and deterring the perpetrator of Rule 11 violations are not mutually exclusive.  If compensation was not a recognizable basis for Rule 11 awards, aggrieved litigants would have little incentive to pursue sanctions thus diminishing the important deterrent effect of Rule 11."  *Rentz v. Dynasty Apparel Indus.*, 556 F.3d 389, 400 (6th Cir. 2009) (internal quotation marks omitted) (quoting *Brandt v. Schal Assocs., Inc.*, 960 F.2d 640, 646 (7th Cir.1992)).  The Seventh Circuit elaborates:

> In general, the district court enjoys broad discretion in setting a sanction award that it believes will serve the deterrent purpose of Rule 11.  In an effort to deter future conduct, it may impose a flat sanction, it may strike offensive pleadings, or — more commonly — it may direct the offending party to pay the other party's reasonable attorney's fees.  In the latter case, Rule 11 is not a fee-shifting statute in the sense that the loser pays.  Instead, Rule 11 ensures that each side really does bear the expenses of its own case — that the proponent of a position incurs the costs of investigating the facts and the law.  But if the court determines that an award of attorney's fees will serve the deterrent purpose of Rule 11, it has an obligation to award only those fees which directly resulted from the sanctionable conduct.

*Divane v. Krull Elec. Co.*, 319 F.3d 307, 314 (7th Cir. 2003) (internal citations and quotation marks omitted) (quoting *Mars Steel Corp. v. Cont. Bank*, 880 F.2d 928, 932 (7th Cir. 1989)), *cited in* Wright & Miller, *supra*, § 1336.3.

As a Rule 11 sanction in *Rentz*, for example, the defendants sought the attorney fees incurred due to litigating claims that lacked any basis in fact.  556 F.3d at 391.  The defendants requested about $70,000.  *Id*.  The district court calculated that the defendants actually incurred about $34,000 because of the sanctionable conduct.  *Id*.  The court decided to reduce the award, however, to $2,750 ($2,500 against one of the plaintiff's attorneys and $250 against another).  *Id*. The Sixth Circuit reversed, explaining:

> [W]e conclude that the district court abused its discretion in imposing sanctions in these amounts.  Although we recognize that the district court has substantial discretion to determine the nature of the sanctions it imposes, we believe that the court here has failed adequately to explain how such small monetary sanctions —

particularly in comparison to the amount of attorney fees incurred due to the sanctionable conduct — would satisfy Rule 11's deterrent purposes. We reiterate that compensation and fee — shifting are not the goals of Rule 11. However, we think it clear that the de minimis sanctions imposed by the district court here are simply inadequate to deter Rule 11 violations. Victims of Rule 11 violations such as the Warfield Defendants would have no incentive to file a motion for sanctions if their reward for successfully litigating the issue is only a tiny fraction of the amount of expenses incurred because of the sanctionable conduct. Indeed, under the district court's ruling, the Warfield Defendants actually would have lost money by litigating and prevailing on their motion for sanctions because the total sanctions awarded ($2,750) amounted to less than half of the amount spent by the Warfield Defendants in connection with the sanctions hearing ($5,520).

Instead, we believe that sanctions in the amount of the reasonable attorney fees incurred by the Warfield defendants due to the sanctionable conduct constitute the least amount sufficient here to deter future violations. Accordingly, we vacate that portion of the district court's order setting the amount of sanctions at $2,500 as to Leonard and $250 as to Roach, and remand so that the district court may promptly order sanctions of $29,294.87 against Leonard and $3,747.37 against Roach, representing the reasonable attorney fees incurred by the Warfield Defendants due to the sanctionable conduct of each attorney.

*Id*. at 402.

As noted, if attorney fees are awarded, they must be limited to those incurred due to the sanctionable conduct. "Because sanctions can have the effect of chilling vigorous advocacy," the court explains, "this Court has limited sanctions to the point in time at which plaintiffs should have realized that their claims were frivolous and the lawsuit should have been voluntarily dismissed." *Dearborn St. Bldg. Assoc. v. Huntington Nat'l Bank*, 411 F. App'x 847, 850 (6th Cir. 2011) (internal quotation marks and citations omitted) (quoting *Garner v. Cuyahoga Cnty. Juvenile Ct.*, 554 F.3d 624, 643 (6th Cir. 2009); *Tahfs v. Proctor*, 316 F.3d 584, 594–95 (6th Cir. 2003)).

In this case, Plaintiff's counsel should have known that the claims in the amended complaint were subject to arbitration. Likewise, counsel should have recognized that opposing the motion to compel arbitration was objectively unreasonable. Counsel should have voluntarily

dismissed the amended complaint. Instead, counsel raised frivolous arguments in opposition. Consequently, for two reasons penalizing counsel with having to pay Defendant's attorney fees is appropriate. First, it obligates counsel to bear the expenses unreasonably caused in this case. Second, it allows market forces to calculate those expenses.

As Defendant has not specified the amount of attorney fees incurred in defending against the amended complaint, however, the Court will order supplemental briefing. In filing the briefs, the Court cautions the parties to give careful attention to the requirements of Rule 54.1.2 of the Local Rules of the Eastern District of Michigan and the guidance provided by the Sixth Circuit in *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343 (6th Cir. 2000), for the information required to calculate a "reasonable" fee.

**IV**

Accordingly, it is **ORDERED** that Defendant's motion to compel arbitration (ECF Nos. 10, 11) is **GRANTED**.

It is further **ORDERED** that Defendant's motion for sanctions (ECF No. 12) is **GRANTED**.

It is further **ORDERED** that that Defendant is **DIRECTED** to file a supplemental brief on the amount of reasonable attorney fees and costs which Defendant is entitled to recover from Plaintiff. Defendant's supplement brief is due by **June 21, 2012**.

It is further **ORDERED** that Plaintiff may file a response brief on the amount of reasonable attorney fees within fourteen days of service of the supplemental brief.

Dated: May 21, 2012

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 21, 2012.

s/Tracy A. Jacobs
TRACY A. JACOBS